UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JEFFERY L. FISHER,              )
                                       )
           Plaintiff,          )
                                         )
      v.                            )      No.  4:20 CV 1054 CDP
                                         )
KILOLO KIJAKAZI, Acting       )
Commissioner of Social Security,[1]   )
                                         )
          Defendant.      )

## MEMORANDUM AND ORDER

Plaintiff Jeffery L. Fisher brings this action under 42 U.S.C. § 405 seeking judicial review of the Commissioner's final decision denying his claims for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*.  For the reasons that follow, I will reverse the decision and remand for further proceedings.

### Procedural History

On June 8, 2018, the Social Security Administration denied Fisher's March 2018 application for DIB in which he claimed he became disabled on February 6,

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.  She is substituted for former Commissioner Andrew Saul as defendant in this action.  *See* Fed. R. Civ. P. 25(d).

2017 (Tr. 148), because of ankle, shoulder, and hip impairments (Tr. 178).[2]  Fisher

later amended his alleged onset date to June 8, 2017.  A hearing was held before an

Administrative Law Judge (ALJ) on August 13, 2019, at which Fisher and a

vocational expert testified.  On October 21, 2019, the ALJ denied Fisher's claims

for benefits, finding that Plaintiff was able to do some of his past relevant work, as

it is generally performed in the national economy.  (Tr. 12-22).  On July 23, 2020,

the Appeals Council denied Fisher's request for review.  (Tr. 1-5).  The ALJ's

decision is thus the final decision of the Commissioner.

      In this action for judicial review, Fisher claims that the ALJ's determination

that he can perform light work is not supported by substantial evidence and that the

ALJ failed to fully develop the record.  Fisher asks that I reverse and remand the

administrative decision for further evaluation.

**Medical Records and Other Evidence Before the ALJ**

      With respect to medical records and other evidence of record, I adopt

Fisher's recitation of the facts set forth in his Statement of Uncontroverted

Material Facts (ECF 29) as admitted by the Commissioner with unrefuted

additional facts (ECF 33-2).  This Statement provides a fair and accurate

---

[2]  Fisher previously filed an application for DIB on August 29, 2014.  His application was
initially denied on January 14, 2015, and again on February 15, 2017 after a hearing.  (Tr. 56-
65).  The Appeals Council denied his request for review on January 19, 2018.  (Tr. 70-75).

description of the relevant record before the Court.  Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A. <u>Legal Standard</u>

To be eligible for DIB under the Social Security Act, Fisher must prove that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether

he has a severe impairment; and whether his severe impairment(s) meets or medically equals the severity of a listed impairment.  At Step 4 of the process, the ALJ must assess the claimant's residual functional capacity (RFC), that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011), and determine whether the claimant is able to perform his past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy.  If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience.  *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).  If the claimant has nonexertional limitations, the Commissioner may satisfy her burden at Step 5 through the testimony of a vocational expert.  *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision.  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

## B.  The ALJ's Decision

The ALJ found that Fisher met the insured status requirements of the Act on September 30, 2018, and had not engaged in substantial gainful activity since June 8, 2017, the date he alleges he became unable to work.  She found that Fisher has the following severe impairments: idiopathic peripheral autonomic neuropathy;

bilateral tarsal tunnel syndrome; left ankle osteoarthritis with osteochondral defect lesion; capsulitis and synovitis left ankle, with subchondral sclerotic cyst, status postarthroscopy; chronic obstructive pulmonary disease (COPD); and tobacco abuse.  However, she found those impairments do not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 18).  The ALJ then found that he had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except

> he cannot climb ladders, ropes or scaffolds. The claimant can occasionally climb ramps and stairs, crouch and crawl. He cannot walk on uneven surfaces or operate foot controls bilaterally. He can have no concentrated exposure to extreme heat, cold humidity, wetness, dust, fumes, or other pulmonary irritants.

(Tr. 19).  Considering his RFC, the ALJ found vocational expert testimony to support a conclusion that Fisher could perform his past relevant work as an assembly-press operator.  The ALJ thus concluded that he was not under a disability at any time through his date last insured.

C. <u>RFC Evaluation</u>

Fisher claims that the ALJ's RFC determination is not supported by substantial evidence.  He argues that the ALJ erroneously found that his statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record.   He also argues that the ALJ inadequately explained how the medical evidence translates to her assessment of Fisher's functional

- 6 -

limitations.  He claims that the record was devoid of evidence demonstrating his functional limitations, and thus the ALJ failed to fully and fairly develop the record.

      1.  *Consistency of Subjective Complaints* [3]

A claimant's RFC is the most a claimant can do despite his physical or mental limitations.  *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations.  *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1545(a).  Accordingly, when determining a claimant's RFC, the ALJ must evaluate the consistency of the claimant's subjective statements of symptoms with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

---

[3] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).  The factors to be considered in evaluating a claimant's statements, however, remain the same.  *See id*. at *13 ("Our regulations on evaluating symptoms are unchanged.").  *See also* 20 C.F.R. § 404.1529. This new ruling applies to the Commissioner's final decisions made on or after March 28, 2016.

For purposes of social security analysis, a "symptom" is an individual's own description or statement of her physical or mental impairment(s). SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a claimant makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id.* at *8. In doing so, the ALJ must consider all the evidence relating thereto, including what are familiarly referred to as "the *Polaski* factors," that is, the claimant's prior work record; daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted); s*ee also* 20 C.F.R. § 404.1529.

"[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson*, 363 F.3d 738-39. Where an ALJ explicitly considers the relevant factors but then discounts a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, after Step 3 of the five-step sequential analysis, the ALJ recounted Fisher's statements about the intensity, persistence, and limiting effects of his foot impairments and his activities of daily life:

> On his adult function report, the claimant stated he lived in an apartment with his family. He reported he had difficulty with walking or standing for more than a few minutes at a time and could not lift more than five pounds. He spent his day sitting on the couch, eating and watching TV. He reported pain woke him from sleep often. He could perform his personal care with difficulty and very slowly. He indicated he relied heavily on his wife to cook, clean and do many routine household tasks. He stated he was able to go outside at least once a week and could go out alone. He was able to drive and manage his own finances. He stated he could not go many places requiring him to walk as he could only walk about twenty feet before needing to rest. He indicated difficulty with lifting, bending, standing, reaching, walking, kneeling, stair climbing and using his hands. He further indicated he used an ankle boot for support, cane and brace or splint.

(Tr. 19) (internal citations omitted).  The ALJ determined that his statements about the intensity, persistence, and limiting effects of his symptoms related to his feet were inconsistent with the minimal clinical findings of the evidence of record.  She then thoroughly described Fisher's medical history relating to his feet, including evidence that pre- and post-dates his alleged period of disability by several months.

In particular, the ALJ described evidence showing that Fisher repeatedly responded to his medical treatment.  She noted that Fisher complained of ankle pain and he was diagnosed with osteochondral defection lesion, chronic ankle sprain and capsulitis, synovitis of the left ankle in March 2017.  (Tr. 20, 227).  He underwent a left-ankle arthroscopic surgery on April 12, 2017, two months before

his alleged disability onset date.  (Tr. 20, 228-30).  However, Fisher's surgeon, Dr. Carmina Quiroga, repeatedly noted "ideal correction of the deformity is apparent."[4] (Tr. 20).  Four weeks after his surgery, he told Dr. Quiroga that he was not wearing his prescribed cam boot walker and was weight bearing.  (Tr. 20, 233).  On June 6, 2017, two days before his alleged disability onset date, he rated his pain 4/10.  (Tr. 235).  Dr. Quiroga noted that he was "doing well post corrective surgery" and considered transitioning him to wearing a normal shoe.  (Tr. 20, 236).  A month later, he told his doctor that he felt good, and that "he has minimal pain at this time."  (Tr. 20, 237).

The ALJ also noted that, after Dr. Quiroga applied low dye strapping and dispensed pre-fabricated orthotics, Fisher reported pain again from August until December 2017 (Tr. 20, 239, 241, 243, 245).  During that time, Fisher's doctors noted a valgus deformity in his left foot (Tr. 20, 242) and enthesopathy of the left foot (Tr. 246), an MRI showed fluid filled clefts involving mid calcaneus (Tr. 21, 244), and radiographs showed a non-displaced fracture of his left fibula (Tr. 21, 248).  Fisher reported a reduction in pain after Dr. Quiroga administered a steroid injection on December 5, 2017 though.  (Tr. 21, 246-47).  His doctor's treatment notes on January 2, 2018 show that he rated his pain as 2/10.  (Tr. 247).  After a

---

[4] April 25, 2017 (Tr. 231), May 9, 2017 (T. 233), June 6, 2017 (Tr. 235), July 11, 2017 (Tr. 237), August 8, 2017 (Tr. 239).

below the knee cast was applied to his left leg, he told his doctor that "it's not too painful anymore."  (Tr. 21, 249-50).  He was told to return to using his cam boot walker daily.  (Tr. 21, 249-250).  In February 2018, Fisher reported that he has good and bad days.  (Tr. 251).

The ALJ noted that Fisher complained of pain to his cardiologist in March 2018.  His cardiologist determined that his feet pain was most likely related to neuropathy and prescribed gabapentin.  (Tr. 21, 263-64).  On September 4, 2018, an electrophysiological study showed evidence of bilateral tarsal tunnel syndrome.  (Tr. 21, 316).  The ALJ discussed examinations after Fisher's date last insured that showed additional defects (Tr. 21, 348), and on January 3, 2019, a primary care provider, Nurse Constance Young, also increased Fisher's dosage of gabapentin.  (Tr. 21, 283).  In May 2019, Nurse Young observed his gait was normal, and told Fisher to diet and exercise.  (Tr. 21, 274).  In July 2019, his provider noted that he had full range of motion of his extremities with no deformities or edema noted.  (Tr. 308).

Thus, the ALJ properly noted evidence showing that Fisher responded to treatment during the relevant period.  Evidence that an impairment can be controlled by treatment or medication is inconsistent with a claim that the impairment is disabling.  *Turpin v. Colvin*, 740 F.3d 989, 993 (8th Cir. 2014).  And as explained by the ALJ, Fisher's treatment during the relevant period primarily

consisted of pain medication and braces and splints. (Tr. 22). *See Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) ("A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications." (citing *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998))).

While "[a]n ALJ may not discount a claimant's subjective complaints solely because the objective medical evidence does not fully support them," the ALJ's analysis shows that she considered non-medical evidence to support her conclusion as well. *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009). *See also Lowe v. Apfel*, 226 F.3d 969, 972 ("The ALJ was not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting [the claimant's] subjective complaints."). She described Fisher's activities and found that he can perform most of his activities of daily living, even though he relies on his wife to do most of the chores and cooking (Tr. 22): he reported that he could handle his own personal care, went outside once or twice a week, drove a car, and could leave the house by himself. (Tr. 19, 186, 188, 194). Her analysis of Fisher's medical history shows that she also considered Fisher's statements about the duration, frequency and intensity of his symptoms to his doctors. Despite Fisher's complaints of severe pain, the ALJ noted that Fisher reported minimal pain to his doctors in June and July of 2017 and January 2018 –

seven months after his alleged disability onset date and eight months before his date last insured.  (Tr. 20, 21).

Fisher marshals much of the same evidence discussed by the ALJ to claim that the ALJ mischaracterized the clinical findings as minimal and his treatment as conservative.  But Fisher's most invasive treatment – his left ankle arthroscopy – occurred before the relevant period, and x-rays of his left leg showed that his leg fracture healed (Tr. 249-250).   The record does not demonstrate additional treatment for pain besides a cam boot walker and gabapentin, medication prescribed by his cardiologist to treat neuropathy.  A reasonable person could consider this treatment as "conservative" and these findings "minimal."

Fisher also argues that the only evidence adverse to his statements was Nurse Young's treatment note on May 8, 2019, seven months after his date last insured, in which she observed that Fisher's gait was normal and instructed him to diet and exercise.  He argues that Nurse Young was Fisher's primary care provider and was only treating Fisher's other impairments, so her omission of any evidence relating to his foot pain was intentional.  It is not apparent from her treatment notes that Nurse Young intentionally omitted any evidence relating to Fisher's foot pain. Nor was Nurse Young's treatment note the only evidence contradicting Fisher's statements.  The ALJ's review of Fisher's treatment history documents evidence

that Fisher's statements about his symptoms were sometimes inconsistent with his statements to his doctors and his pain was treated with medication and splints.

At bottom, most of the evidence of record may properly be characterized as mixed, with evidence both supporting and detracting from the ALJ's decision.  But I may not reverse the ALJ's decision merely because substantial evidence could also support a contrary outcome.  *McNamara*, 590 F.3d at 610.  When an ALJ seriously considers but for good reasons discounts a claimant's subjective complaints, the Court will not disturb the ALJ's determination.  *Johnson*, 240 F.3d at 1147.  Here, the ALJ described the medical evidence of record and adequately explained her reasons for the weight given this evidence.  Thus, I will not disturb her determination that the record is inconsistent with Fisher's statements about his symptoms, even if I could have reached a contrary one.

2.  *RFC Assessment and Duty to Develop the Record.*

I agree with Fisher, however, that the ALJ failed to explain how the evidence supports her RFC assessment.  In particular, the ALJ points to no evidence "providing a basis for the specific conclusion that [plaintiff] can stand or walk for 6 hours in an 8-hour workday."  *Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020).

After describing Fisher's medical history relating to his feet, the ALJ determined that Fisher's symptoms "did not cause the limitations to the severity

alleged," but "they do cause some limitations and the [RFC] accounts for those

limitations by limiting him to a light exertional level" with additional postural

limitations. (Tr. 21). Social Security Administration regulations explain that

> light work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds . . ..
> [A] job is in this category when it requires a good deal of walking or
> standing, or when it involves sitting most of the time with some pushing
> and pulling of arm or leg controls. To be considered capable of
> performing a full or wide range of light work, you must have the ability
> to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Social Security Ruling 83-10p further explains that light

work involves standing or walking for "approximately 6 hours of an 8-hour

workday." 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983).

Other than discounting Fisher's subjective complaints and the opinion

evidence of a State agency consultant, the ALJ did not analyze the evidence as it

relates to Fisher's ability to perform this work. Discounting a claimant's

statements is not equivalent to demonstrating by medical evidence that a claimant

has the RFC to perform certain work-related activities. *Estabrook v. Apfel*, 14 F.

Supp. 2d 1115, 1122 (S.D. Iowa 1998), cited approvingly in *Patton v. Colvin*, No.

2:14CV47 ACL, 2015 WL 3548823, at *17 (E.D. Mo. June 8, 2015)

(memorandum and order). Instead, the ALJ must discuss and describe "how the

evidence supports each conclusion, citing specific medical facts (e.g., laboratory

findings) and nonmedical evidence (e.g., daily activities, observations)." *Sieveking*

*v. Astrue*, Case No. 4:07 CV 986 DDN, 2008 WL 415674, at *9 (E.D. Mo. Sept. 2, 2008) (quoting S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).  The ALJ did not undergo this process here.  She failed to analyze the evidence as it related to what Fisher is able to do despite his impairments.

Moreover, review of the record shows little evidence of Fisher's functional abilities to support the ALJ's assessment.  Her assessment was not supported by opinion evidence because she determined that the sole opinion, the State's agency consultant's opinion that Fisher was able to perform medium work, was unpersuasive because it was not supported by the record.  (Tr. 22).  The medical evidence described by the ALJ relates to his treatment and diagnoses, not what he is able to do.  And, even discounting Fisher's statements about the limiting effects of his symptoms, his activities of daily life do not show an ability to perform light work, specifically the ability to stand 6 hours in an 8-hour workday.  The closest the record comes to supporting Fisher's ability to stand 6 hours is Nurse Young's instruction to diet and exercise, and a July 2019 treatment note documenting full range of motion and no deformities or edema in Fisher's extremities.  However, Nurse Young's note does not specify the type or duration of exercise to be performed, the July 2019 treatment note does not show Fisher's functional abilities, and both notes post-date Fisher's date last insured by several months.

While the burden to prove that the claimant is disabled rests on the claimant, an ALJ has a duty to develop the record fully.  *See Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001); *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). "This duty is not never-ending, and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).  But the ALJ is required to order medical examinations and tests when the medical records presented to her do not furnish sufficient evidence to determine whether the claimant is disabled.  *See Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). *Cf. McCoy*, 648 F.3d at 612.  An ALJ need not "obtain from medical professionals a functional description that wholly connects the dots between the severity of [a claimant's impairments] and the precise limits on a claimant's functionality. Something, however, is needed." *Noerper*, 964 F.3d at 746.  Here, Fisher's functional abilities in light of his foot impairments were crucial to assessing his RFC.  Because the record did not contain sufficient medical evidence showing his functional abilities, the ALJ failed to fully develop the record.

The Commissioner argues the ALJ was not required to rely on any opinion evidence because the evidence of record – including work background reports, medical records, and hearing transcript – provided a sufficient basis for the ALJ's determination.  She attributes any deficiency in the record to Fisher's failure to carry his burden to provide evidence.  But the ALJ's duty to develop the record

"exists alongside the claimant's burden to prove [his] case." *Noerper*, 964 F.3d at 747.  Fisher's failure to provide medical opinion evidence supporting his claim does not render a sufficient basis for the ALJ's determination.  Despite evidence from several sources, the record was, as admitted by the Commissioner, "relatively sparse."  ECF 33 p. 14.  Critically, it did not provide sufficient medical evidence of Fisher's functional abilities in light of his foot impairments.

Given the ALJ's failure to support her conclusion that Fisher is able to perform light work, and the absence of evidence "translating the medical evidence and subjective complaints into functional limitations," I am unable to determine "the permissibility of the Commissioner's RFC determination[,]" and specifically whether Fisher can perform light work with additional limitations.  *Noerper*, 964 F.3d at 747.[5]  Accordingly, I will remand the matter to the Commissioner with instruction to more fully develop and evaluate the record with respect to the functional limitations imposed by Fisher's foot impairments.  The Commissioner shall obtain and provide the parties an opportunity to submit medical evidence that addresses Fisher's ability to function in the workplace, which may include

---

[5] The Commissioner argues that Fisher has not shown that any failure to develop the record was unfair or prejudicial as required to warrant reversal.  *See Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 517 n. 3 (8th Cir. 2019) (" '[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.' " (quoting *Shannon v. Charter*, 54 F.3d 484, 488 (8th Cir. 1995))).  I agree that Fisher has not argued that such failure was prejudicial.  However, the ALJ's failure to support her finding that Fisher is able to perform light work constitutes a sufficient basis for reversal.

contacting Fisher's health care providers to clarify his limitations and restrictions in order to ascertain what level of work, if any, he is able to perform. *See Coleman v. Astrue*, 498 F.3d 767 (8th Cir. 2007); *Smith v. Barnhart*, 435 F.3d 926, 930-31 (8th Cir. 2006). Upon the receipt of additional evidence, the ALJ must reconsider the record as a whole and reassess Fisher's RFC. Such reassessed RFC must be based on some medical evidence in the record and shall be accompanied by a discussion and description of how the evidence supports each RFC conclusion. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

## Conclusion

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 24th day of March, 2022.